UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONTINENTAL AIRLINES, INC. 401(k) SAVINGS PLAN, *Plaintiff*, v. BRENDA ALMODOVAR-ROMAN, et al., *Defendants*. | Civil Action No. 16-5766 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Continental Airlines, Inc. 401(k) Savings Plan's ("Plaintiff" or "Continental") motion for default judgment against Defendants Brenda Almodovar-Roman and John Does 1 through 10 pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 9. For the reasons set forth herein, the motion is **DENIED**.

**I. BACKGROUND**

Plaintiff is a defined contribution plan organized under the laws of Texas and licensed to do business in New Jersey. Compl. ¶ 3. Defendant Brenda Almodovar-Roman is an adult individual residing at 33 Mill Street, Apartment 3E, Newton, NJ 07860. Id. ¶ 4. Plaintiff is "ignorant" of the true identities and capacities sued as John Does 1 through 10. Id. ¶ 5.

Continental Airlines sponsored a "defined contribution plan" (the "Plan"), within the meaning of Section 1002(34) of the Employee Retirement Incomes Security Act of 1974, as amended ("ERISA"). Id. ¶¶ 6-7. Continental is the fiduciary of the Plan within the meaning of

1

section 1002(21) of ERISA. Id. ¶7. Almodovar-Roman was a participant in the Plan during her course of employment with Continental Airlines.[1] Id. ¶ 8.

During the last quarter of 2014, the first quarter of 2015, and the second quarter of 2015, Almodovar-Roman did not have a balance in her Plan account. Id. ¶ 9. On September 4, 2015, Continental mistakenly rolled over another Plan participant's funds, in the amount of $149,071.89[2] (the "Mistaken Payment"), into Almodovar-Roman's Plan Account. Id. ¶ 10; Affidavit of Jamie Miller ("Miller Aff.") ¶6, ECF No. 9-2. On October 3, 2015, Almodovar-Roman was sent a third quarter Plan account statement that posted the Mistaken Payment and showed her balance as $149,071.89.[3] Compl. ¶ 11, Miller Aff. ¶ 7, Ex. A.

On October 19, 2015, Almodovar-Roman requested a total distribution of her plan account. Compl. ¶ 12. This equaled a gross payment amount of $152,596.66,[4] minus the applicable federal taxes of $30,519.33, for a net payment of $122,077.33. Id. ¶ 12; Miller Aff. ¶ 8, Ex. B. Continental processed the payment on October 19, 2015, and mailed a check in the amount of $122,077.33 to Defendant Almodovar-Rosen's home address. Compl. ¶ 12; Miller Aff. ¶ 9, Ex. C. Subsequently, Almodovar-Roman deposited or cashed the check in the amount of $122,077.33. Id. ¶ 13.

In December 2015, Continental discovered the Mistaken Payment and commenced efforts to recoup the payment from Almodovar-Roman. Id. ¶ 14. Numerous correspondences were sent

---

[1] It appears Almodovar-Roman is no longer employed by Continental Airlines. See Compl. ¶ 6 ("At all relevant times herein, Defendant, Brenda Almodovar-Roman, was employed by or retired from Continental Airlines").
[2] The Complaint at ¶ 10 misstates the amount that was rolled over into Almodovar-Roman's account as $152,596.66. Pl's. Br. at 2, ECF No. 9-1.
[3] The Complaint at ¶ 11 misstates the amount shown in the third quarter Plan account statement as $152,596.66. Pl's. Br. at 2.
[4] The gross payment amount of $152,596.66 is greater than the $149,071.89 originally rolled over into Almodovar-Roman's Plan account due to earnings between the initial rollover on September 4, 2015 and the time of disbursement on October 19, 2015. Pl's. Br. at 3.

to Almodovar-Roman requesting repayment of the $122,077.33.  Id.  Almodovar-Roman has not responded to any of Continental's requests.  Id. ¶ 15.  Plaintiff contends that Almodovar-Roman is still in possession of all or part of the Mistaken Payment and that all or part of the Mistaken Payment can be traced from Almodovar-Roman to John Does 1-10.  Id. ¶ 16.

On September 21, 2016, Plaintiff filed a Complaint in this Court.  ECF No. 1.  The Complaint consists of two counts against Defendants: (1) a claim for equitable relief under ERISA and (2) a breach of contract or unjust enrichment claim under New Jersey common law.  Compl. ¶¶ 17-20.  Under both counts, Plaintiff seeks an accounting of the Mistaken Payment and imposition of a constructive trust over the Mistaken Payment and any remaining amounts in the possession of Almodovar-Roman or John Does 1-10, together with costs, prejudgment interest, and attorneys' fees.  Id.  Plaintiff also requests other equitable relief, including a restraining order imposed on Almodovar-Roman and John Does 1 through 10, which may be necessary to maintain and restore the plan.  Id.

On September 23, 2016, service of the Complaint was made on Almodovar-Roman.  ECF No. 3.  On October 21, 2016, Plaintiff requested the entry of default, and the Clerk entered default on October 24, 2016.  ECF No. 5.  On January 6, 2017, the Court directed Plaintiff to move for default judgment within ten days to avoid dismissal.  ECF No. 6.  The Court subsequently granted Plaintiff's request for an extension of time to file for default judgment.  ECF Nos. 7, 8.  On January 31, 2017, Plaintiff filed the instant motion for default judgment.  ECF No. 9.  The motion is unopposed.

## II. LEGAL STANDARD

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred."  Animal Sci. Prods., Inc. v. China

Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008). Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages. See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011). Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

In addition, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

### III. ANALYSIS

#### A. Jurisdiction & Service

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Almodovar-Roman, but the Court does not have enough information to determine whether it can exercise personal jurisdiction over the unnamed defendants. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this matter raises a federal question: whether Plaintiff is entitled to recovery of the Mistaken Payment pursuant to 29 U.S.C. § 1132(a)(3) and attorney's fees and costs under 29 U.S.C. § 1132(g), both provisions of ERISA. The Court has personal jurisdiction over Almodovar-Roman, as her residence is in Newton, New Jersey. Service of the

Summons and Complaint was made by personal service on Almodovar-Roman on September 23, 2016. ECF No. 3.

However, the Court cannot determine whether it has jurisdiction over Defendants John Doe 1 through 10 or whether those unnamed defendants have been properly served. Continental seeks default judgment against John Doe 1 through 10 and imposition of a constructive trust over any amounts of the Mistaken Payment that are in Defendants John Doe 1 through 10's possession. This is improper. See Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 684 n.4 (D.N.J. 2015). Consequently, the request to enter default against the "John Doe" Defendants is **DENIED**.

**B. Liability**

Plaintiffs have pled an ERISA claim against Almodovar-Roman. ERISA, 29 U.S.C. § 1332(a)(3) provides:

> A civil action may be brought … (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or (B) to obtain other appropriate equitable relief to (i) redress such violations or (ii) to enforce any provisions of this subchapter of the terms of the plan.

The term "equitable relief" in 1132(a)(3)(B) refers to "those categories of relief that were typically available in equity." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993)). To establish an equitable recovery under § 1332(a)(3), Continental must show it is seeking to recover property that is (1) specifically identifiable; (2) belongs in "good conscience" to the plan; and (3) is within the possession and control of the defendant. See Knudson, 534 U.S. at 213 (2002) ("[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."). However, if the funds

have been dissipated, Continental's claim is only that of a general creditor and equitable relief is unavailable. Id. at 214 ("[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession).

Here, Continental alleges (1) the $149,071.89 erroneously placed into Almodovar-Roman's 401(k), which was later disbursed to her in the amount of $122,077.33, is specifically identifiable property; (2) the property belongs in "good conscience" to the Plan because it was mistakenly rolled over from another Plan participant's fund; and (3) the property is either entirely or partially in Almodovar-Roman's possession. See Compl. ¶¶ 10, 13, 16; Miller Aff. ¶¶ 6, 8-11. While Plaintiff has sufficiently alleged that specifically identifiable property belongs in "good conscience" to the Plan, it has not shown that the property is clearly traceable to funds in Defendant Almodovar-Roman's possession. See, e.g., Unum Life Ins. Co. of Am. v. Grourke, 406 F. Supp. 2d 524, 529 (M.D. Pa. 2005) (finding no equitable cause of action under 1332(a)(3) where plaintiff failed to provide any evidence that outstanding overpayments remained in defendant's possession). As a result, the Court finds Plaintiff has not sufficiently pled a claim for equitable relief under ERISA.

Plaintiff also alleges state law claims for breach of contract and, alternatively, unjust enrichment. See Compl. ¶¶ 19-21. However, any state law claims are preempted by ERISA. See Minnis v. Baldwin Bros. Inc., 150 F. App'x 118, 120 n.1 (3d Cir. 2005) (finding state law claims preempted where plaintiff alleged an ERISA plan in his complaint); see also 29 U.S.C. § 1144(a) (providing that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute); Shaw v. Delta Airlines, 463 U.S. 85, 96-96 ("A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a

connection with or reference to such a plan."). Consequently, Plaintiff is not entitled to relief under either ERISA or state law.[5]

IV. **CONCLUSION**

For the reasons set forth above, Plaintiff Continental Airlines, Inc. 401(k) Savings Plan's motion for final judgment by default is **DENIED** without prejudice. An appropriate order accompanies this opinion.

Dated: September 29, 2017.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States District Judge**

---

[5] Because the Court finds Plaintiff has not sufficiently pled a cause of action, it will not move on to consider defenses, prejudice, culpability, or damages.